No.17-1150. Mr. Stone, Mr. Becker. May it please the court. My name is Brian Stone and I am requesting three minutes of time for rebuttal. That's fine. Thank you. Subject to your questions and concerns, I issue of qualified immunity and finally, if time permits, to simply note several matters that have been raised, not only in the brief, but in the prior motions raised by defense counsel that have gone unanswered. If we may. Certainly, Judge. We will spend a fair amount of time on the constitutional issue, but on qualified immunity, and I realize I'm working that these officers should have been aware of that says that coming onto a property such as yours with a no trespass sign, etc. was not in, quote, open fields, close quote. I do not recall any case that had addressed that issue, Judge. I would note, if I may, if we skip into the area of qualified immunity, that a year ago, a panel of this court, which included Judge Krause, relied on Supreme Court cases and held an L.R. against school district of Philadelphia, that where the conduct is so outrageous that a similar factual case is not needed in order to overcome the doctrine of qualified immunity. Indeed, Your Honor noted in the court's majority opinion this summer, in fields against Philadelphia, that qualified immunity has carved out an exception concerning specific similar factual cases. But in fields was easy. I mean, there were a number of cases starting with the First Circuit back in 2010-2011 that went that way, and one could argue we were simply following suit. But, Your Honor, particularly noted three cases in this circuit that said the issue of recording police was undecided. In 2011 and 2013. At the time of the conduct. I know of no case in this circuit that has ever invaded, allowed an invasion of the home, including its curtilage. I mean, the home is so important to the people. Do you agree, then, that we can start with the premise that a mere trespass would not be sufficient for a constitutional violation? Yes. In federal court, that is certainly the law, and I agree with that, Judge Krause. And does your argument, then, depend on that trespass going into the home or curtilage of the home? Do you have to establish that for us to find that there is even a constitutional violation here? There is something before that, Judge. In this instance, you have 75 acres of densely wooded property that has set forth, and you'll see it on page 24 of the appendix, that set That statement of fact, take the statement of fact on page 24 of the appendix, was not disputed. So what you have here, and there are cases on this that say that you can have a natural barrier. But doesn't that just go to the done factor as to the boundaries? That is, isn't that an argument as to curtilage? I think they're interrelated, Judge. But before you get to the curtilage, you have an enclosure. And the case is so clear that if the property is enclosed, then that would be a constitutional violation. When you get... Without it being curtilage? Yes, Judge. If I may, I would refer you to the United States against Johnson. I believe that's cited in my brief. I can give you the cite for it. United States against Riley, and of course, Williams against Garrett. I know that's cited in my case. So as such, there was a reasonable expectation of privacy in those properties. It doesn't have to be a home. It doesn't even have to be a home. It's property, and it can be enclosed. And if there's an invasion of that enclosed property, I believe that would constitute a constitutional violation. Now, of course, as you say, when you get beyond that and get to the courtyard or curtilage in front of the home, that again is a violation. Well, here, aren't we talking about the garage of the law office? The garage is next to the home, Judge. And before you reach it, you have to go through a courtyard. And there's an opening there for somebody to do that. So what you have is a courtyard, a curtilage of the home. But going back to the definitions of curtilage, the third factor under Dunn is looking at the uses of the property. And if the barn there and the uses of the barn was being put to in Dunn itself were deemed not sufficient to reflect the activities of daily life and the sorts of intimate life that we associate with Fourth Amendment protections, why would the garage of a law firm or the courtyard outside of a law firm be entitled to any more protection? Well, you say the courtyard in front of the law firm. It's also the courtyard in front of the home. It's one courtyard. It's a common courtyard. The home and the garage or law office are right next to one another. And in Dunn's case, there were four specific factors that should be considered as well as any other factor that a court may find There were addressed, though, in the plaintiff's papers. There was an effort to keep that property private. There was no discussion at all concerning the uses of it. There's proximity to the home. And forgive me, Judge, I forgot the fourth factor at this moment. But that wasn't considered by the court below. Isn't there some tension between the signage, what you're pointing to as a long driveway, the no trespass signs, on the one hand, and cases like Oliver v. United States where there was almost exactly the same description of the property with the same signage with a locked, closed gate at the driveway and with a long driveway going down into the property? How do you distinguish a case like Oliver? Okay. Not only was this property posted along the perimeter, but most of the property was not visible from the perimeter. Oliver dealt with open fields. Well, that's also just like Oliver. I mean, Oliver had to pass through a significant wooded area. So how is this really distinguishable from the Oliver case? It's not just one wooded area. This is the entire property, except for a very small area which we call the courtyard or curtilage. So almost all of it is enclosed. And if I may, Judge, in the statement of facts, it was alleged that this is enclosed. That's in the appendix. The allegation was that this property is enclosed by a natural barrier, and there was no challenge to that. And there was facts to support it. Where do you think the curtilage of this property or the house begins, where the garage is? I think it begins where the woods ended. Which would have been the curtilage? Yes, Judge. Understand, we're not talking about a lot in a city. How do you define curtilage? A courtyard that joins the home. Okay. An area that's immediately around or next to or abuts the home. I'm looking at a picture here of an aerial picture of the office, the home, etc. Where is there a courtyard? I see a driveway leading seemingly up closer to the office than anything else. If I may, Judge, that's a photograph actually that was submitted by or provided by the and it just focused in on the area immediately around the home. If you had an aerial photograph of the entire premises, that would be like a dot compared to the other 70 acres. You're talking about an area of about four acres, including the home, including the garage. Four acres that is not densely wooded. All the rest of it is densely wooded so that you cannot see the house, you cannot see the courtyard, you cannot see the garage, you can't see more than 100 feet into it. And yet this property is a very large property, Judge. So it really is enclosed. And that was not challenged. That is a statement of fact that had been put forth. I'm sorry that that particular photograph doesn't show the whole thing, but it was far better than the photograph that had been submitted by the defendants during the wintertime. It was intended to just focus on the same area that the defense had put forth. What about the search and seizure argument that you make here? Why does it constitute a search or a seizure? I'm glad you raised that. The court has spoken about this issue and has found, at least as I can see, has found no problem with that. I think that you must have somebody looking for something to be a search or a seizure. I think that was indicated in Judge Scalia's footnote in the Jones case. No, there's no allegation that they were seeking evidence of any kind for any purpose. If I may, let me go back to the beginning. There was no allegation that there was no search and that there was no seizure when the summary judgment motion was made. But in this case, the deputy's only words were, I am looking for the plaintiff. That's on page 16 of the appendix. And the definition of the word search means looking for something or someone, and the dictionary will give an example, there was a search for a child. So when you're looking for someone and it's a thorough search, you're trekking 70 acres of land looking for someone or trying to gain information about the whereabouts of that person, I view that as a search. I also view it as a seizure because it interfered with the exclusive right of possession of the plaintiff. What case do you rely on to suggest that the ministerial act of a law enforcement officer in effecting service is tantamount to conducting a criminal investigatory search for constitutional purposes? If I may, let me first step back because the deputies in Pennsylvania are not law enforcement officers. The Supreme Court has made that clear that deputies are not police investigators or law enforcement officers. But doesn't that just make the argument weaker? Let's assume we're even talking about law enforcement officers, but all they're doing is not conducting a criminal search. What they're doing is serving the process. Judge, according to the defendants, the deputy went to that property four times over a 10-day period. And on the fourth time, only the last time did he go around the gate. I think at that time he knew that he was disregarding the property rights and the constitutional rights of the owners. You have a situation where you have multiple signs, a closed and locked gate. He avoided doing that the first three times. And then he said, you know what, I'm going down there. I'm going to do this. I'm going to find this person. I'm going to search for this person. Now, that's far different than somebody who just approaches an individual on the street or at a home in a city where it's open. There's nothing open about this. There are important reasons why a former prosecutor may want to have some privacy at their home. And that's what's involved in this case, Judge. So it's not just a momentary stop of somebody or inquiry of somebody. And there are many ways to affect service. One of the things the deputy could have done is get an order to go up to the property or make a phone call or do something other than just disregard it because he got frustrated in his first three attempts. So now he's going to just go ahead and disregard it. And I think by disregarding it, you have a situation where he intended to violate the law. We talk about overcoming the qualified immunity. And so the exceptions are a person who intentionally violates the law or is incompetent. And I believe in this case you're going to find that the deputy intended to violate what he knew to be the right. We'll get you back on rebuttal with regard to that, and it's a good segue to Mr. Geiger. Before I go, Judge. Oh, I'm sorry. My time is up. I'll get you back. May it please the Court, my name is Jerry Geiger. I represent Sheriff Todd Martin and Deputy Jason Dunlap. And the questions that you asked, Mr. Stone, also prompt me to start with a qualified immunity issue first. And a number of reasons for that. One is this is a very difficult case for the Sheriff's Office. It just illustrates the problem that a sheriff has in trying to serve process on people, especially in a rural area like we have. We have a lot of farmland, and almost every farm is posted with no trespassing and no hunting signs. And for the most part, many of those same farms have gates on them. Judge Mannion, the district court judge, found that there was no Third Circuit case on point here. And if you look at the other circuits that have addressed the issue, and I've tried to find something at an appeals court level, they all primarily dealt with cases involving criminal-type searches, where a deputy or a law enforcement officer came onto a piece of property, went into the curtilage of the property, and then the defendant was trying to exclude that evidence. This is somewhat different. As Judge Krause had mentioned, this is service of process, which is a little bit different. And I believe it's the Florida v. Jardines case that's cited in the briefs. There was a reference there to the fact that even if it's within curtilage, if there's an entranceway that you come up and knock on someone's door, there's no privacy in that type of situation. Judge, before we move into this area, is your point in describing the landscape that the sheriffs are facing, that even if we could decide this case purely on fairly established grounds, that because it's such a common occurrence and concern for your client's office, that we ought to address the merits of the constitutional violation itself? Well, I do think that would be helpful because I've been asked to set up guidelines for the sheriff's office, and I quite frankly don't know what to say. And I think the primary reason is that if you look at the done factors, there is no formula for this. There's four factors that you look at, and it tends to be a case-by-case situation. But would this case even be a good vehicle for that, given that it has the rather unique circumstance of a commercial establishment that is not even adjoining the home? There is the twist of that, that this is a law office that is advertised on the front that is open to the public and has all the no trespassing signs up even when it's open to the public. You know, it adds a complication that makes it difficult to draw a right-line rule. I think the better situation where I'd like to see precedent is where this was just a house, rather than mixing the law office in. Would you agree that entering or breaking or entering without permission a dwelling place would be off-limits? Yes. All right. Yes, but I also want to point out that maybe- I'm sorry, would constitute a violation even if the purpose were merely to serve process? If it were breaking into like a house, I think that's a Fourth Amendment violation. So you agree that the trespass into Crittle Ridge or the home for purposes of serving process, even though not for purposes of a criminal investigatory search, would violate the Fourth Amendment? Well, I mean, breaking into a house and causing damage to the property, I think, should be a Fourth Amendment violation. If you were just walking onto a piece of property, and even if there's a-Mr. Stone had this expectation of it, if you're not doing the search, it's not a Fourth Amendment violation, but it may be a trespass under state law, which the judge really didn't address. He decided to leave that to the Pennsylvania courts. And there's a suit pending in common pleas. That's right. That's right. I'm sorry, let's take out damage to the property. Do you agree that if someone came within the Crittle Ridge of a home for purposes of service of process, that that would violate the Fourth Amendment? I had a difficult issue wrapping my arms around that one, because there were some cases out there, and I don't recall which ones it were, where a deputy went into the Crittle Ridge, but then when the search part was outside the Crittle Ridge, and then the courts in those cases held that there was no Fourth Amendment violation, even though the deputy had gone into the Crittle Ridge. So in that sense, I suppose, you know, it would be incorrect to say that merely getting into that area is a Fourth Amendment violation. It really is a trespass, at least the way the courts have analyzed it, but this court hasn't analyzed that as far as I know. I mean, the problem that you have is that I think what Mr. Stone is saying, that if we go your way, it sets a bad precedent. Sheriffs in the future or deputies will be expected to scale fences, circumvent gates, wander around private property, and that's all well and good if we go your way. How do you respond? Well, I would cite to you a Pennsylvania statute that explicitly allows that. There's a 34 Pennsylvania Code 901, or Pennsylvania Statutes 901A2, specifically authorizes wildlife conservation officers to go upon any land or water outside of buildings posted or otherwise in the performance of the officer's duty, but that same statute excludes allowing them to go into Crittle Ridge. So there's already statutory authority under Pennsylvania law. Of course you can understand why wildlife officers would be allowed to do that. That's the area where they work. Right, but it's still, if you follow Mr. Stone's analysis, he put up no trespassing signs and he doesn't want anybody anywhere, and he hasn't really fully defined what Crittle Ridge is either. I would say this is not Crittle Ridge because it was in a common parking area next to the law office, which Mr. Stone admits in the statement of facts is about 70 feet from the house. A lot of the cases I cite talk about that same distance as not being within the Crittle Ridge. You have argued that whether the law office building was within the Crittle Ridge of the home here was irrelevant and went on to focus your brief entirely on the question of the purpose of entry, whether it was a search. Have you then waived any argument as to this not being Crittle Ridge? I don't think so. What I was trying to say is that in referencing some of the cases that I cited where it was okay for a deputy to go into the Crittle Ridge as long as he didn't pull anything or he didn't do a search within the Crittle Ridge. I know we're splitting hairs here, but in those cases there was no Fourth Amendment violation. So the fact that briefly they went into the Crittle Ridge area didn't create a cause of action if what they found as part of a criminal search was outside the Crittle Ridge. So that's why I was thinking it was irrelevant in that context because the criminal courts that looked at it were trying to decide the fruits of the search came from where. We don't care whether or not there was a past violation of the Crittle Ridge. If the evidence came from the Crittle Ridge, then we're going to exclude it. This is all in the criminal context. I'm trying to analyze this type of situation to the criminal cases, and this is why I was trying to convince the district court judge of the qualified immunity defense because all of the guidelines out there really talk about the criminal context of all of this, and I'm having a hard time drawing the line between that and merely service of process. The judge found that case from Oregon in the district court there that seemed to be almost identical to this one where it was just talking service of process as being something fundamentally different because it's not a search. Well, the Supreme Court in cases like U.S. v. Jones has said that a search for Fourth Amendment purposes is a trespass conjoined with an attempt to find something or obtain information. So the question, I gather, you're focusing on is looking for the person for purposes of service sufficient to have that second piece. Right, and I think the McCauley district court also commented on that. To comment that if asking for is Ellen Stone here or are you Ellen Stone, if that's a search, then every officer on the street who pulls someone over does a Fourth Amendment search because they asked for their name. It's not really the way we understand the Fourth Amendment. Well, a case like Jones is not saying that that alone is. It's saying that the combination of the trespass and that purpose, even if it's not the traditional criminal investigatory purpose, would be sufficient. Perhaps, I mean, if we were to interpret the attempt to find something or obtain information broadly. Maybe I'm not remembering Jones correctly, but I thought that was in the context of a criminal case where they were looking for evidence. The GPS device on a car for 20 days. The GPS, right. This is somewhat different than that where you're just merely delivering papers to someone. And I really, just to say, are you Ellen Stone, which he didn't even ask. I mean, he had the declaratory statement of I'm looking for Ellen Stone, and she volunteered it. But if pleasantries on introducing oneself is a search, I don't think that's been supported anywhere. And so, which is further support for the Qualified Immunity Analysis, that there's really nothing out there that alerted Deputy Dunlap that this was a search and that if he did it within a certain area marked as no trespassing, that that was a Fourth Amendment violation. What about the analogy to administrative searches? Agencies, health code inspectors, without either consent or some kind of warrant, they're not able to just come into areas that are deemed to have an expectation of privacy, a home, or even without there being some law in the books or consent, commercial establishments, right? Why wouldn't that be the right analogy in sufficient notice that it's not proper to come in even for a non-criminal purpose? Candidly, I'm not familiar with what the restrictions are on those types of officials, but it would seem that service of process is fundamentally different in what the purpose of it is. If one of those administrative officers was going there, that's most likely for information and for searching for material information evidence. Our case is not that, it's delivery. And it's a one-way street, really. With the exception, if you buy my premise, that asking the name is not a search. I think what you're saying is with the administrative type of search, they're actually looking for evidence no different than probably a policeman looking for a marijuana field. It's all looking for something that could harm that person in terms of some type of a prosecution, where all our sheriff is doing is delivering. Don't we have to be concerned about the further consequences if we were to say that a trespass, even into a home, so long as it didn't involve the purpose of a criminal investigatory search, but say just walking into a door that's left ajar, walking into someone's home and looking for them in the house for purposes of serving process, that that is not a Fourth Amendment violation? How do we take account if we go that route, which I gather you're espousing maybe. I don't want to. But isn't part of the problem that once there, all of the other traditional criminal exceptions come into play? For example, plain view exception. And so there's reason to be cautious about literally opening that door. I think that's where, looking at the larger picture, where curtilage came in. The curtilage is kind of an acknowledgment that not just the interior of a house has some privacy, but there's maybe a limited area outside the house where people shouldn't be allowed to go in. And that's why we came up with the idea that open fields and things that were generally viewable by the public didn't have that expectation of privacy or have, I think the courts have used the word, intimate activities of the home. But what's counterintuitive here is that going through, as I said before, past a gate, through a wooded area, et cetera, it doesn't seem to a rational person that that's really open fields, is it? I mean, in the context of having a sign saying, you know, this is my law office, and the fact that there's a gate there, there is no other fencing around it. I mean, it's all open. I mean, there's statutes that allow certain types of people just to walk on and go into your fields, and that's not a violation. So are you saying that we shouldn't look at this any differently than we would look at a home in a typical suburban area where maybe there's 20 yards from the main street to the house and where there's a posting to keep out trespassing? I think if you follow these done factors, these four factors about how you decide if it's curtilage, having a house in the middle of a city with a white picket fence around it posted with no trespassing signs is a little bit different than a farmland that has no trespassing and no hunting signs. But still, you know, the courts still try to join the two and say that, well, what is the area? Let's look at this. What's the reasonable expectation of privacy? And the Jardine case said walking up to the front door of a house with a picket fence around it would not be a Fourth Amendment violation. There's a common entranceway doctrine I believe they referenced. So that, you know, what was intimate? What intimate activities did Deputy Dunlap infringe upon when he shows up in the driveway of a law office and does not even go into the building, sees the plaintiff's wife from an open garage doorway and hands her paperwork? There's nothing intimate about that. And so, you know, if you're applying strictly these done criteria, I don't see how that happens. But we look, there are four of them. And if three of the four weigh in favor of privacy, does that mean we should conclude it is curtilage and put aside the use, which is what I think you're focusing on. But I think the courts have said there's no bright line formula. So, you know, I guess it's kind of like you know it when you know it. I don't know what to tell, how you're going to rule on this. My guess is that you're not going to come up with a bright line formula and that's going to have to be fact specific to each case and that some of those elements might have more persuasive authority than other ones. So that you can't say that, well, if we have three of these elements, then this is the rule. If only two, then it doesn't apply. You know, I think it's looking at it, what is the intimate activity that was infringed upon here? She's standing in a law office and papers are handed to her. Is that really a breach of the sanctity of the home? Standing in a garage, you mean. Well, the garage was part of the law office. So, I mean, even in the other case, I don't remember the case name, where a sheriff's deputy looked in and saw the woman standing there naked wasn't considered to be a search. So this is quite a bit different than that. Does the extent of the protection of the property make a difference? That is, if there's a 30-foot wall and somebody gets a ladder and scales over it. I think that in the way the courts have analyzed this, yes, it would affect it. Because then it doesn't become open fields. It becomes a more secure castle-like premises. And I think that would be a difference that you'd have to weigh as part of those four dumb factors. Thank you, Barry. Thank you. Mr. Stone, when people come to your law office, do they have to just drive up the driveway or do they have to be let in? How does it work for your clients? There is a closed door that typically somebody will knock on. I mean, when they're outside and they want to come up the driveway. If they want to come in from outside. Yes. And so that you have a better understanding, it's above the garage. So that's where it was located. Okay, so, I mean, if a client wants to come in, do they have to, do you have to in some way know that they're coming or? Every client that has come in has always made a phone call first that an appointment had been made. Okay, so if a client wanted to come in, quote, off the street, close quote, could they just come up the driveway? That's not happened before, Judge. It could happen. Theoretically. Yes, theoretically it could certainly happen. Okay. But it had not. Let me quickly mention a few factors. The fourth factor that I forgot before is the enclosure. That's a factor under done. Mr. Geiger pointed out that it would be helpful to have guidelines. I think we agree with that. And so I certainly hope that the court, as it did in fields against the City of Philadelphia, will address the constitutional issues so that we all have guidelines. Judge Amber mentioned the wildlife situation. It doesn't include process service or sheriff's deputies. The claim of 70 feet was put in to make this statement of facts so as to avoid a dispute. Actually, in this case, the deputy went much closer, but we didn't want to have a dispute as to the distance. We feel that that would be sufficient and there are cases that support that. I want to emphasize that the Fourth Amendment is not intended to protect criminals. Much had been discussed have been police cases. It's intended to protect we, the people. And the shock that a person may encounter when their privacy or property is invaded or they're being searched, it doesn't matter if it's a criminal case or a civil case. Probably more shocking to the law-abiding person. Traditionally, the remedy for a Fourth Amendment violation would be suppression. By bringing this as a 1983 action, you're asking for damages. Don't you have a remedy available if you want damages? Isn't trespass the right way to go? How do we make trespass into a constitutional tort every time? Well, under the guise of engaging in governmental activity, the deputy violated a Fourth Amendment right of privacy. A right of privacy, as you know, goes back over 1,000 years before the adoption of the Bill of Rights. But that's the nature of trespass. Where do you draw a line between a trespass, a state law claim that you have and can seek damages from a 1983 claim for a constitutional violation? Judge, it's in addition to the trespass. Just as an assault on a person can be the basis for a 1983 action as well as an assault. You have both a federal and a state violation. They don't preclude one another. Let me simply say the open field doctrine would not apply because there has to be plain view. If something is in plain view, then, yes, you have open field doctrine. Sorry. In your view, would any trespass onto private property for purposes of serving someone with the service of process constitute a Fourth Amendment violation? No. But if the property is enclosed and the person is engaging, and it's not a momentary step or two. In this instance, the deputy walked three-tenths of a mile searching. And this is the deputy's word, searching for the plaintiff. And when he saw the person, a person he didn't just introduce himself as was suggested. He said, I am looking for Ellen Stone. That is a search that absolutely meets the definition of a search, Judge. So you have to be looking for something. How does that meet the definition of a search? I'm sorry? How does that meet the definition of a search? Give me the rationale. The definition of a search, and I think I referenced several dictionaries on it, is a thorough looking for someone or something. And that's when this deputy trekked through three-tenths of a mile through dense woodlands and said, I am looking for Ellen Stone, that is a search. The phrase looking for is the equivalent of search. And you don't see any distinction between search as just used in common speech and any constitutional search? I'm sorry.  You don't distinguish between search as used in common parlance, just a dictionary definition of looking for something, anything. On the one hand, a Fourth Amendment search, you don't see a Fourth Amendment search as something distinct from a search as we use it in common speech. I don't think the word search has a special meaning when the Fourth Amendment was adopted. I think it had a common meaning and would include looking for someone or something. I don't think it has special meaning under the Constitution. If I may, judges, as I said, the open field doctrine applies only if there is something in plain view, and certainly this House was not in plain view of the statements of facts put in by the plaintiff were not disputed. We have a situation here. The case that Mr. Geiger was looking for was the McCarthy v. County of Kootenai case, where an animal was shot that was doing nothing more than animals do when you invade or trespass or intrude upon their property. We don't want to have a situation where deputies are peering through windows after going through an enclosed area. We don't want to have animals shot. We don't want to have confrontations. If a sign is ineffective and the enclosure is ineffective, the lock gate is ineffective, then what we're going to have at some point is going to be a person who's going to say, no, you can't come here on this property. And a deputy says, yes, I can. The Third Circuit says I can do this. And that confrontation can certainly lead to a tragic situation. Well, as one of my former chief judges for our court, I'd be happy to say that's the next case. Yes, Judge. And we don't want that case either. Understood. I'll give you 30 seconds to sum up because we've gone way past. Thank you, Judge. We have increasing technology today at an amazing rate, and so the need to protect the basic foundations of our country, the need to protect privacy also increases. I see this panel is well aware of the issues. I urge the court to address the Constitution issue. That's the reason we're really here, as you have done in the field against the city of Philadelphia. And I want to thank the court for its concern of these issues and for the courtesy of allowing me to appear today. Thank you. Is this your first oral argument before the Court of Appeals? In this circuit, Judge, and I've had some in the Second Circuit, but this is a much better circuit. Well, as they say, it's about feeling you've done good. Both of you are very well presented, and we'll take the case under advisement.